FRANCIS COLLINGWOOD et al.

v.

WILLIAM P. WHITE, LYSANDER E. WATSON et al.

[Decided January 4th, 1899. Filed June 10th, 1899.]

In proceedings by abutting property-owners to restrain a municipality from
paying for an improvement because it was not constructed according to specifi-
cations, an injunction *pendente lite* is warranted where the evidence whether
the improvement was defective is conflicting, and where it appears that the
municipality will not defend against a demand by the contractor for payment.

On order to show cause why injunction should not issue.
Heard on bill and affidavits, and affidavits on the part of the
defendants.

*Mr. William B. Guild,* for the complainants.

*Mr. J. Flavel McGee, Mr. Samuel A. Patterson* and *Mr. David
Harvey, Jr.,* for the defendants.

PITNEY, V. C.

The bill is filed by seven gentlemen, severally owners of real
estate in that portion of the borough of Neptune City, Mon-
mouth county, known as Avon-by-the-Sea, against the mayor
and members of the common council of Neptune City and
Lysander E. Watson, contractor with the borough for the grad-
ing and graveling certain of the streets of Avon-by-the-Sea.

Upon tne presentation of the bill, with an exhibit and affidavit annexed, an order to show cause, without *interim* restraint, was made, and before the return day the defendants served upon the solicitors of the complainants numerous affidavits to be read on the argument.

At the hearing of the order the counsel of complainants, against the protest of the defendants, was permitted to read certain affidavits which were partly in further support of the allegations of the bill, and partly in answer to the affidavits served and read by the defendants.  The court offered to the defendants time to enable them to answer these additional affidavits, if they desired to do so, but the defendants declined to take advantage of the offer, and the motion was argued on the affidavits presented.

The object of the bill is to prevent the payment by the common council to the defendant Watson of a balance of about $1,700 alleged to be due him as a last payment upon a contract for upwards of $17,000 for grading and graveling certain enumerated streets in the borough of Neptune, comprised in the suburb known as Avon-by-the-Sea.

The affidavits established the fact that the complainants are severally the owners of land abutting on the streets included in the contract, and are liable to assessment for the cost of doing the work, which was done under the provisions of the act of April 24th, 1897 (*P. L. of 1897 p. 285*), known as "A general act relating to boroughs."

In the spring of 1898 the common council solicited, by newspaper advertisement, proposals for grading and graveling the several streets in question agreeably to a map and specifications on file with the clerk of the borough.  Those specifications, and a contract to be used therewith, had been prepared by Mr. Niart Rogers, civil engineer and official engineer of an adjoining borough.  The specifications called for the use of the "best clay gravel" as a covering, of a certain specified depth, &c. The contract, as originally prepared in blank, provided that the work should be done "according to specifications hereunto annexed, prepared by Niart Rogers, civil engineer," and according

to the map made by Rogers and filed in the office of the clerk, and "all said work to be done under the direction and supervision of the said Niart Rogers." In another part of the contract he is named as the engineer "in charge of the work." But by a special direction of the common council the clause which declared that the work should be done "under the direction and supervision of the said Niart Rogers" was altered so as to read that it should be done "under the direction and supervision of the street committee" of the common council of said borough. And, in point of fact, the work was done under the supervision of the street committee.

Mr. Rogers, in addition to furnishing the contract and specifications, agreed, for a specific sum, to furnish a map and to do the engineer work of making the assessments of benefits; but, in point of fact, he did not undertake, and was not expected to undertake, the supervision of the work, or to see to it that the materials furnished were in accordance with the contract. He was, however, employed to measure up the work from time to time and report the number of square yards that had been done up to the date of his measurement, and he gave certificates to that effect, none of which, however, certify to the *quality* of the work or materials.

The contract was dated April 25th, 1898, and provided that the work should be finished by the 1st of July, 1898. In point of fact, it was not finished until about the 1st of October.

Some time during the summer, while the work was being done, complaints were made by some of the complainants and others to the common council as to the character of the material used by Mr. Watson, the specific complaint being that it was not "best clay gravel," but was of an inferior quality.

On the 24th of August, 1898, a resolution was presented and adopted by the council reciting that complaints had been made by citizens and taxpayers that the Watson contract was "not being filled in accordance with the proposals and specifications," and it was resolved

"that no more payments be made to Watson until the engineer in charge of the work duly certifies to the council that the same is correct, and that Niart

Collingwood *v.* White.

Rogers, engineer in charge, be and is hereby requested to make a full detailed report of work done and quality of materials used under such contract, and submit the same at the next regular meeting of the council, and that the clerk of the board is hereby directed to serve a copy of this resolution upon said engineer at once."

In pursuance of that resolution, Mr. Rogers made an elaborate examination of the gravel already used and being used by Mr. Watson, and compared it with other specimens of gravel in the neighborhood, and subjected several specimens of it and other gravels to proper tests, the result of which was all set forth in a long written report, which was submitted to the council about the 12th of September, a copy of which is annexed to the bill. After stating that the gravel in use was much inferior in quality to other gravels in the neighborhood, he summed up the result as follows :

"There is no reasonable doubt but that the specifications have been violated in regard to the 'best clay gravel,' as numerous complaints and warnings from myself and others since the commencement of this work and at the beginning have implied, and that the contractor and his supervisors have been at fault in not having more carefully examined the quality of the material in order to avoid any such complications as have since arisen."

So far as appears, the common council paid no attention to this report, and after its receipt proceeded to formally accept the work as done by Mr. Watson, and made a large payment on account, which, with the former payments, aggregated nine-tenths of the whole amount, reserving just one-tenth as security, as provided for under the forty-fourth section of the act.

It was the affidavit of Mr. Rogers, verifying under oath the accuracy of his work and the truth of his report, and the affidavits of several engineers and others supporting him, to which objection was made, and which the defendants were offered and declined further time to answer.

In answer to the case thus made several members of the common council, and several other persons claiming to be experts, made affidavits in which they state that the gravel used by Mr. Watson was the best *average* clay gravel—whatever that may

mean—but only a few of defendants' affiants venture to swear that it was the best clay gravel.

I have read all the affidavits carefully, and come to the conclusion that there is enough in them to warrant this court in enjoining the payment of the money until the final hearing of the cause, unless the defendant Watson shall choose to bring a suit at law at the end of the three months' time allowed by the statute, and the common council will defend the action and permit the complainants to make the defence which they set up by their bill.

It is manifest that the common council will refuse to defend against the payment unless directed so to do by this court. A majority of them are satisfied with the materials used, and propose to hold back the ten per cent. payment to the extent only of securing the repair of some soft spots which have developed in the work, and which they affirm can be repaired for $200.

In the affidavits of the defendants and argument thereon stress was laid on the monthly certificates given by Mr. Rogers as controverting his later report and affidavit. But, as we have seen, those certificates only covered the quantity and did not certify to the quality of the work.

The power and propriety of the court interfering at all in this matter was vigorously challenged by the counsel of defendants, but it is thoroughly sustained by the leading case of *Bond* v. *City of Newark,* decided on final hearing by Chancellor Zabriskie in 1869, and reported in *4 C. E. Gr. 376.* In that case the original injunction had been granted by Chancellor Green in his lifetime. That case was followed by Vice-Chancellor Dodd in *Schumm* v. *Seymour, 9 C. E. Gr. 143,* which was in many of its aspects much like the present case. Both these cases contain instructive dissertations on the principles governing such cases, and were approved by Chief-Justice Beasley, speaking for the court of errors and appeals, in the case of *Lodor* v. *McGovern, 3 Dick. Ch. Rep. 275,* with the single exception that in the previous cases this court had undertaken itself the task of ascertaining what amount should be allowed to the contractor, no objection being made to the jurisdiction of the court

Collingwood v. White.

in that respect. The chief-justice, in *Lodor* v. *McGovern,* held that practice to be improper, and that the disputed question should be settled by an action at law if the contractor chose to adopt that remedy.

*Liebstein* v. *Newark; 9 C. E. Gr. 200,* differed from the present case in that there the whole contract price had been paid before the bill was filed, and the object of the bill was not to stop the payment of money, but to enjoin the assessment of the amount of the work upon the complainants as abutting landowners. The injunction was refused on the ground that the result would be to cast the whole burden upon the city at large. It was apparently held in *Lodor* v. *McGovern, supra,* that the suit should be brought as well for the complainants as for the benefit of all other persons situate as were the complainants who might come in and contribute to the expense of the suit, and an amendment was permitted for that purpose. Such an amendment may be made here; but I cannot leave the topic without suggesting that I am unable to see sufficient reason for requiring the bill to have that feature. I had occasion to examine that question in the recent case of *Iauch* v. *de Socarras, 11 Dick. Ch. Rep. 524.* Here, if the seven complainants choose to undertake the burden of defending a suit by the contractor, and are successful, the result will be to defeat his entire recovery, and will inure to the benefit of all persons situate as are the complainants, whether they desire it or not. It is not necessary for any other abutting landowner to be a party to the suit in order to obtain the benefit of its successful result.

I will advise an order in accordance with the foregoing views.